### 33685. CHAMBERS *v.* THE STATE.

GARDNER, J. (*a*) The defendant was convicted on an indictment drawn under the provisions of the Code, § 26-8001, which reads as follows: "Whoever shall torture, torment, deprive of necessary sustenance, mutilate, cruelly, unreasonably and maliciously beat or ill treat any child, or cause any of said acts to be done, shall be guilty of a misdemeanor." The count on which the defendant was found guilty under the indictment, omitting the formal parts reads: " . . on the 8th day of January, 1951, [the defendant] did with force and arms and unlawfully cruelly ill-treat a said newly born bastard baby of his 17-year-old daughter, Lizzie Mae Chambers, by failing to give any care and attention whatever to said baby when it was born, although he was well able to have done so, and was alone in the same room with his said daughter when she was having the baby, and had sole custody and control of said daughter, and within a few minutes after said baby was born, he forced his said daughter, the mother of said baby, to leave said new-born baby by herself while he locked the mother of said baby in another room away from the said baby."

The facts in this case reveal a sordid scene, and we will not go into details of the evidence more than is necessary to substantially set forth the facts. The defendant lived in what is designated as a small two-room house; one of these rooms was used for a bedroom, the other for a kitchen. In the bedroom were two beds. One of the beds was occupied as a place for the defendant and his nephew, a 17-year-old boy, to sleep. The other bed was occupied by the daughter, Lizzie Mae Chambers, and Julia Pearl Wilson, a niece of the defendant, who was about 15 years old and was a sister of the boy who slept with the defendant. The defendant was employed in working from 11 p. m. until 7 a. m. and slept during the day.

On January 8, 1951, about noon Lizzie Mae began giving birth to a child. There was no one in the bedroom except the father of the daughter, Lizzie Mae, at this time. The bedroom was a small one. Lizzie Mae began upon delivery of the child, "hollering and crying and screaming" with the pains of childbirth. The baby was born alive. Lizzie Mae got out of the bed and went to a dresser and procured a pair of scissors and cut the navel cord and went back to the bed. "My papa was looking right at me. I reckon he was. He was there in the bed. He made no move to help me at all." She did not wash the baby. Within about five or ten minutes, the father, on a pretense of using the slop jar in the room for a call of nature, had Lizzie Mae leave the bedroom and go to the kitchen, where there was no bed. He latched the door

between the kitchen and the bedroom. While Lizzie Mae was fastened out of the bedroom she heard him walking around. Lizzie Mae was allowed to return within about fifteen minutes. She could not say that the child had been moved, but it seemed like the cover over the child had been displaced. The child was not washed. The navel string was never tied. Before the defendant returned to work a close neighbor came in and Lizzie Mae was in bed with the baby. It was alive. The defendant was in the room. When the baby would cry, the defendant would talk loud, to keep the visiting neighbor woman from hearing the baby cry. Nothing was said by anyone to the neighbor regarding the birth of the child. The defendant went to his work at the usual time. During his absence, the baby died.

Julia Pearl Wilson testified that, upon the defendant's return about 6:30 the next morning, he said: "If I don't bury the child he will kill me." There is no evidence that the defendant knew at the time he was commanding Julia Pearl to bury the baby that the child was dead. Julia Pearl buried the baby back of the "privy." The baby was dead at the time it was buried. After the baby was buried by Julia Pearl, the defendant sent her for a shotgun. We will not go further into details regarding the testimony of the sheriff having found the baby buried about 12 inches under the dirt; nor as to the parched lips and tongue of the baby which might indicate that someone had given the child strong acid; nor as to the conversation of the defendant with a neighbor concerning the pregnancy of Lizzie Mae while she was going with the child; nor the conversation between one of the neighbors and the defendant as to Lizzie Mae's condition and the charge of the neighbor that the defendant was the father of the child, and that he made no reply when so accused; nor the numerous instances where the defendant sought to conceal the pregnancy of Lizzie Mae and sought to conceal the birth of the child; nor his omission and failure to give any assistance to Lizzie Mae during or after the birth of the baby; nor his failure to give any assistance for the care of the child.

(b) We have no doubt that, under the circumstances as revealed from this record, the defendant under the Code section under which the indictment was drawn owed a legal duty to Lizzie Mae and to the child, which he failed to perform and which amounted to cruelty and inhuman and unreasonable conduct on the part of the defendant, as shown by this record. See *Mitchell* v. *State,* 39 *Ga. App.* 100 (146 S. E. 333). The court did not err in overruling the motion for a new trial for any of the reasons assigned.

*Judgment affirmed.* *MacIntyre, P. J., and Townsend, J., concur.*

Decided October 3, 1951.

*Alex S. Boone Jr.,* for plaintiff in error.
*C. S. Baldwin Jr., Solicitor-General,* contra.